IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                    Case No. 12-10131-JTM

JOHN WAYNE KING,

    Defendant.

MEMORANDUM AND ORDER

The defendant John Wayne King is charged with one count of possession of a firearm by a felon. The matter is now before the court on the defendant King's Motion to Suppress. The court has previously granted in part and denied in part King's request for discovery for records relating to the training, certification, and deployment of the K-9 unit. On October 17, 2012, the court conducted a hearing in which it heard evidence as to the circumstances surrounding King's arrest, and the parties submitted additional briefing after the hearing. For the reasons provided herein, the court hereby denies King's Motion to Suppress.

King was arrested on April 20, 2012, in Great Bend, Kansas. Great Bend Police Department Patrolman Brian Dougherty recognized King's Chevrolet Suburban, and

followed it until he could see that Dougherty was driving. Dougherty knew King, and believed that there was an outstanding warrant for him. He confirmed this suspicion by radio and pulled the Suburban over.

Dougherty arrested King on the warrant, and then walked his K-9 dog "Chester" around the vehicle. Dougherty and Chester were certified by the Kansas Police Dog Association (KPDA) to detect marijuana, hashish, cocaine, crack cocaine, heroin, opium, and methamphetamine on April 1, 2011. The dog alerted for narcotics. In the subsequent vehicle search, officers found no narcotics but did discover a .357 handgun in center console, resulting in the present charge.

Daugherty became a K-9 officer in late 2006. When he picked up Chester, the dog was a year and a half old, and was a "green dog," having no prior training. Daugherty and Chester received 10 weeks of training. This training was the same given to Kansas Highway Patrol Officers.

Daugherty and Chester were first certified by the Kansas Highway Patrol, and later by the KPDA, each year since 2006. Great Bend has chosen to use the KPDA, because it is a smaller police force, and KPDA certification permits more self-training and requires less travel. Each KPDA certification is good for approximately one year, until the certification session for the succeeding year.

Daugherty testified that at the time of a certification, a K-9 unit travels to a place for testing, and a judge puts them through a series of tests. These tests involve searches for

2

hidden drugs, as well as "blanks," in which a search is conducted even though (unknown to the dog handler) no drugs have been hidden.

Daugherty testified that he and Chester are constantly training, although the KPDA has no set minimum amount of training. Daugherty keeps records for all of this training. He stated that in this training he will hide drugs, and make sure Chester indicates where he is supposed to. Sometimes someone else will hide the drugs, but not tell Daugherty where they are.

Daugherty distinguished between "alerts" and "indications." When Chester "alerts" during a search he is trying to narrow down the nature and source of an odor. His ears perk, he sniffs harder, and stops his movement and comes back to a location. When he "indicates," he sits down, demonstrating that he knows the source of the odor. Chester is rewarded for correct indications only.

Chester has never given a false indication in a controlled environment.

A canine sniff itself is not a "search" for Fourth Amendment purposes because of the limited information it provides and its minimal intrusiveness. See *United States v. Place*, 462 U.S. 696, 707 (1983). *United States v. Hunnicutt,* 135 1345 (10th Cir. 1998). Once Chester indicated to the presence of contraband narcotics in King's vehicle, the police could search it without a warrant. *See, e.g., United States v. Herrell*, 41 Fed.Appx. 224 (10th Cir. 2002) (following a canine alert, officer "had probable cause to search the van without a warrant and consent to search the van was unnecessary"); *United States v. Driksill*, 194 F.3d 1321 (10th Cir. 1999) ("[o]nce Agent Roberts' canine positively alerted to Mr. Driskill's vehicle

and trailer, probable cause existed to search the property without first obtaining a warrant"). Accordingly, the sole question presented by the defendant's motion is whether Daugherty and Chester were properly trained and certified.

As this court noted in resolving King's motion for discovery, the Tenth Circuit has previously addressed the importance and effect of certification it this context — holding that "[a] positive alert by a certified drug dog is generally enough, by itself, to give officers probable cause to search a vehicle." *United States v. Ludwidg*, 641 F.3ed 1243, 1251 (10th Cir. 2011). The court further cautioned against a general statistical inquiry into the background of individual canine units:

> [I]t surely goes without saying that a drug dog's alert establishes probable cause only if that dog is reliable. But none of this means we mount a full-scale statistical inquisition into each dog's history. Instead, courts typically rely on the dog's certification as proof of its reliability. After all, it is safe to assume that canine professionals are better equipped than judges to say whether an individual dog is up to snuff. And beyond this, *a dog's credentials provide a bright-line rule for when officers may rely on the dog's alerts* — a far improvement over requiring them to guess whether the dog's performance will survive judicial scrutiny after the fact. Of course, if a credentialing organization proved to be a sham, its certification would no longer serve as proof of reliability. But *the judicial task*, we hold, *is so limited*: *to assessing the reliability of the credentialing organization, not individual dogs*. And in this case there is no suggestion that the California Narcotic Canine Association, the organization that credentialed the drug dog in this case, is all smoke and mirrors.

641 F.3d at 1251 (emphasis added, citations omitted). *See also United States v. Clarkson*, 551 F.3d 1196, 1204 ("successful completion of a training course and a current certification would be satisfactory" evidence of canine reliability); *United States v. Kennedy*, 131 F.3d 1317 (10th Cir. 1997) (canine "'reliability should come from the fact that the dog is trained

and annually certified'") (*quoting United States v. Wood*, 915 F.Supp. 1126, 1136 n. 2 (D.Kan.1996), *rev'd on other grounds*, 106 F.3d 942 (10th Cir.1997)).

"A party seeking to suppress evidence found during a search after a positive dog alert bears the burden of proving that the dog is unqualified." *United States v. Kitchell*, 653 F.3d 1206, 1224 (10th Cir. 2011), *citing Clarkson*, 551 F.3d at 1203. Here, while King has submitted substantial showing that there are other dog certifying organizations and competing certifications standards, he failed to demonstrate any reason for concluding that the KPDA is smoke and mirrors. To the contrary, all of the evidence before the court indicates that KPDA is a *bona fide* police dog training and certification agency, that the KPDA conducts annual certifications for canine units, employing both actual and "blank" placement of narcotics. Further, the evidence before the court establishes that Chester has a remarkable record, having never given a false indication in a controlled environment test.

As with his motion for discovery, King argues that the government has the burden of showing the reliability of the KPDA, and again relies in particular on the decision of the Florida Supreme Court in *Harris v. State*, 71 So.3d 756 (Fla. 2011), *cert. granted*, 132 S.Ct. 1796 (2012), and in the *amici* briefs submitted in support of the respondent in the subsequent and ongoing appeal of that decision to the United States Supreme Court. *Florida v. Harris*, No. 11-817. However, as the court noted in its Order resolving the discovery issue, in *Harris* the certification for the drug dog had expired, and, even more importantly – since handlers and dogs are typically certified together, the certification was for a different handler from the officer who conducted the search.

In the present case, Patrolman Daugherty and Chester were certified by the KPDA at the time of the arrest. Under *Ludwig*, *Clarkson*, and *Kennedy*, the defendant's failure to point to any

substantial reason for doubting the validity and credibility of KPDA certification is fatal to his motion.

IT IS ACCORDINGLY ORDERED this 31st day of October, 2012, that the defendant's Motion to Suppress (Dkt. 12) is denied.

<pre>
                                        s/J. Thomas Marten
                                        J. THOMAS MARTEN, JUDGE
</pre>